UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
ADAM GOODMANN, :
:
:
Plaintiff, : Civil Action No. 04-5861 (JAP)
:
v. : **OPINION**
:
HASBROUCK HEIGHTS SCHOOL :
DISTRICT, *et al.* :
:
Defendants. :
_____:

PISANO, District Judge

     Plaintiff brought this action against defendant Hasbrouck Heights School District ("HHSD") for breach of contract, wrongful discharge and violation of due process arising from Plaintiff's termination from his position as a chemistry teacher. Plaintiff also brought a claim for violation of due process against Alan C. Stephens, a New Jersey Deputy Attorney General, who represented the New Jersey Department of Labor in proceedings in the New Jersey Superior Court relating to Plaintiff's claim for unemployment compensation. HHSD has counterclaimed in this action for attorneys fees, alleging this action is frivolous. HHSD also filed a third party complaint against Plaintiff's father, Arthur Goodmann, for intentional interference with a contractual relationship, fraud, contribution and indemnification based upon an email that Arthur Goodmann allegedly authored and sent to the school district that purported to be Plaintiff's resignation.

1

Presently before the Court are motions for summary judgment filed by HHSD and Third Party Defendant Arthur Goodmann. The Court decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, HHSD's motion is granted in part and denied in part. In granting in part HHSD's motion, the Court dismisses all claims over which it had original jurisdiction and declines to exercise supplemental jurisdiction over the remaining state law claims in this matter. Therefore, Plaintiff's complaint and HHSD's third party complaint are dismissed in their entirety. Third Party Defendant Arthur Goodmann's motion is dismissed as moot.

**I. Background**

This case arises from the termination of *pro se*[1] Plaintiff's employment in early 2003 as a teacher in the Hasbrouck Heights School District. Plaintiff, Adam Goodmann, was hired as a full-time chemistry teacher by HHSD in July of 2002. The parties entered into an employment contract dated July 25, 2002, pursuant to which Plaintiff was to teach in the district's public schools from September 1, 2002 through June 30, 2002. Certification of Donald T. Okner ("Okner Cert.") at Ex. D. This contract provided that either party could terminate the contract upon 60 days written notice. *Id.*

Shortly after signing the contract, Plaintiff commenced his preparation for the school year. Transcript of the Deposition of Adam Goodmann ("Goodmann Dep.") at 119 attached as Ex. C to Okner Cert. Plaintiff taught five high school chemistry classes at Hasbrouck Heights High School. Three of these classes were college preparatory, one was honors, and

---

[1] Although Plaintiff is proceeding *pro se*, the Court notes that Mr. Goodmann has stated that he is an attorney admitted to practice in the State of New York.

one was college chemistry.  HHSD's Responses to Requests for Admissions in Plaintiff's Appendix at S12.

Peter O'Hare was the principal at the high school at which Plaintiff taught and was in charge of reviewing the performance of the faculty members.  *Id.* at S22.  Beginning in approximately November 2002, O'Hare discussed with Plaintiff the need for improvement in his teaching performance.  O'Hare Dep. at 159.  Areas for improvement included classroom management, connecting with students and questioning techniques.  *Id.*  According to O'Hare, these were common problems with new teachers who have difficulty getting started.  *Id.*

In February 2003, Principal O'Hare conducted a "longitudinal observation" of Plaintiff's teaching performance, during which he spent 3 days observing Plaintiff in class. *See* Plaintiff's Appendix to Opposition Brief at F1-F3.  In O'Hare's subsequent written evaluation dated March 5, 2003, O'Hare deemed Plaintiff's overall teaching performance as "unsatisfactory."  *Id.* at F3.  Plaintiff disputed the principal's assessment and prepared a written response to the evaluation dated March 6, 2003, in which Plaintiff commented on the observed classes and stated his belief that "these three lessons were successfully carried forward and were well received."  *Id.* at F5.

On March 18, 2003, Plaintiff met with O'Hare to discuss the evaluation.  The parties each have differing versions of what happened at this meeting.  At his deposition, Plaintiff testified that O'Hare fired him at the March 18th meeting, allegedly telling Plaintiff that March 19th would be Plaintiff's "last day of work."  Goodmann Dep. at 141.  According to Plaintiff, he did not appear for work any day after March 19, 2003, because he believed his employment to be terminated after that date.  *Id.* at 128-129.  However, O'Hare testified that

3

he simply advised Plaintiff at the meeting on March 18th that if Plaintiff's performance did not improve, Plaintiff would not be hired back for the following year.  Deposition of Peter O'Hare ("O'Hare Dep.") at 160, attached as Ex. F to Okner Cert.

The parties do not dispute that Plaintiff came to school and taught all of his classes on March 19, 2003, and did not return to work after that date.  Goodmann Dep. at 129.  During Plaintiff's absence from school during the period March 20, 2003 to March 27, 2003, O'Hare attempted to contact Plaintiff at home by telephone.  *See* Deposition of Arthur Goodmann ("Arthur Dep.") at 21 attached to Okner Cert. at Ex. K.  O'Hare was never able to reach Plaintiff, but rather spoke to Plaintiff's father, Third-Party Defendant Arthur Goodmann ("Arthur"), who resided with Plaintiff.  *Id.*  On one such call, Arthur advised O'Hare that Plaintiff was home but did not want to come to the phone.  *Id.*  According to O'Hare, he asked Arthur why Plaintiff was not coming to school and Arthur replied that Plaintiff was ill.[2]  O'Hare Dep. at 98.  O'Hare told Arthur that "he needed to have a chemistry teacher and he was anxious to have Adam come to school."  Arthur Dep. at 21.  O'Hare also advised Arthur that if Plaintiff wanted to resume teaching, he would have to bring in a doctor's note, *id.*, presumably to excuse his absence, which, according to school attendance records, was recorded as sick leave.  Okner Cert. at Ex. I.

HHSD's Superintendent of Schools, Joseph Luongo, also attempted to reach Plaintiff by phone during this time and spoke to Arthur as well.  Arthur Dep. at 24.  Like O'Hare, Luongo asked to speak to Plaintiff directly but was told by Arthur that Plaintiff did not want

---

[2] Arthur testified that he recalled that Plaintiff was not sick from March 20, 2003 through March 27, 2003.  Okner Ex. J at 2, No. 15.

4

to speak to Luongo. Deposition of Joseph Luongo ("Luongo Dep.") at 63 attached to Okner Cert. at Ex. G. Luongo testified that he inquired when Plaintiff would be returning to work and discussed resignation and termination as options in the event Plaintiff did not return to work. Luongo Dep. at 64, 65-66. This is disputed by Arthur, who stated in a declaration that "Mr. Luongo made clear that it was not an option for my son to return to work." Declaration of Arthur Goodmann at ¶ 7, attached as Ex. 10 to Amended Complaint. Arthur also asserts that Luongo gave him an ultimatum with regard to Plaintiff's employment, namely, that Plaintiff could either resign or his employment would be terminated. Arthur Dep at 27-28. According to Arthur, Luongo told him that resignation "would be in [Plaintiff's] interests" as opposed to termination, which would "negatively affect his record." Arthur Dep. at 27.

On March 26, 2003, shortly after Luongo spoke to Arthur, Luongo received an email purporting to be Plaintiff's resignation from his teaching position. Okner Cert. at Ex. L. The email began "Dear Mr. Luongo"[3] and stated as follows: "I am resigning my position as Chemistry teacher at Hasbrouck Heights high school for personal reasons, effective immediately." The email is signed "Sincerely, Adam M. Goodmann." *Id.* Thereafter, Luongo drafted a resolution accepting Plaintiff's resignation to be voted on at the next meeting of the Board of Education. Luongo Dep. at 69. The resolution, Resolution No. 3-393-03, approving the resignation of Plaintiff as of March 26, 2003, was passed by the Board on March 27, 2003. Okner Cert. at Ex. N; Ex. 6 to Amended Complaint.

Allegedly unknown to Luongo at the time he received the resignation, the email

---

[3] The text of the email is addressed to Luongo. The address to which the email was actually sent belonged to Luongo's secretary. Goodmann Sr. Dep. at 30.

5

purporting to be Plaintiff's resignation was actually drafted and sent by Arthur without the knowledge of Plaintiff. Arthur Dep. at 31. According to Arthur, he sent the email "in response to Mr. Luongo's suggestion that it would be in [his] son's best interest to resign because he would not have a termination on his record." *Id.* Arthur did not tell Plaintiff that he sent the email until "quite a while after" it was sent, "maybe weeks after." *Id.*

On April 7, 2003, Plaintiff sent a letter to Superintendent Luongo asking for "written confirmation of both [Mr. Luongo's] and Mr. O'Hare's action to fire [Plaintiff] from Hasbrouck Heights High School" and further asking to be "advise[d] of the date on which [Plaintiff's] employment was terminated." Ex. 5 to Amended Complaint. Luongo's letter in response to Plaintiff attached a copy of the email Luongo received and advised that Plaintiff's "resignation was accepted at the Board of Education meeting held on March 27, 2003." Ex. 6 to Amended Complaint.

On November 30, 2004, Plaintiff filed his complaint against HHSD alleging that he was terminated without proper notice and without a meaningful opportunity to contest the termination decision. The complaint alleged breach of contract, wrongful discharge and a violation of due process under the Fourteenth Amendment to the United States Constitution. On August 25, 2005, Plaintiff filed an Amended Complaint repeating the allegations set forth in his original complaint. On September 20, 2005, HHSD filed its Answer to the Amended Complaint, Third Party Complaint and Counterclaim. The Third Party Complaint brought against Plaintiff's father contains the following counts: (1) intentional interference with a contractual relationship; (2) fraud and deceit; (3) contribution; and (4) indemnification. By way of its counterclaim, HHSD alleged that this lawsuit is frivolous and was brought in bad

faith, and HHSD seeks attorneys fees and costs in defending this suit.

**II. Discussion**

**A. Summary Judgment Standard**

To prevail on a motion for summary judgment, the moving party must establish "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The district court's task is to determine whether disputed issues of material fact exist, but the court cannot resolve factual disputes in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In determining whether a genuine issue of material fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stephens v. Kerrigan*, 122 F.3d 171, 176-177 (3d Cir. 1997). The moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex Corp. v. Catret*, 477 U.S. 317, 323 (1986). Once the moving party has met its opening burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id*. at 324. Thus, the non-moving party may not rest upon the mere allegations or denials of its pleadings. *Id*. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

Once the moving-party has demonstrated to the court the absence of a material fact at issue, the Supreme Court has stated that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Matsushita*, 475 U.S. at 586-87 (citations omitted). In other words, "[i]f the evidence [submitted by the non-moving party] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The Supreme Court has specifically recognized that:

> One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses, and [] that [the rule] should be interpreted in a way that allows it to accomplish this purpose."

*Celotex*, 477 U.S. at 323-24. Thus, "[w]hen the record is such that it would not support a rational finding that an essential element of the non-moving party's claim or defense exists, summary judgment must be entered for the moving party." *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 341 (3d Cir. 1990).

**B. Procedural Due Process Claim Against Hasbrouck Heights School District[4]**

Section 1983 (42 U.S.C. § 1983) provides a remedy when a constitutionally protected right has been violated by a party acting under color of state law.[5] *Oklahoma City v. Tuttle*, 471 U.S. 808, 816, 105 S. Ct. 2427, 85 L. Ed.2d 791 (1985). To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the violation of a right secured by the

---

[4]It is not explicit in the Amended Complaint which type of due process claim Plaintiff is asserting in this action, however, Plaintiff's briefing on this motion clarifies that Plaintiff is asserting a procedural, not substantive, due process claim.

[5]Although Plaintiff has not framed his constitutional claim in terms of Section 1983, the court will construe his complaint as doing so.

Constitution, and (2) that the constitutional deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed.2d 40 (1988). In the present case, HHSD does not dispute it is a state actor, but rather argues that Plaintiff has not been deprived of any constitutional right. Plaintiff, on the other hand, alleges his due process rights under the Fourteenth Amendment were violated, specifically, (1) the right to a position to teach, including a mentoring program necessary for Plaintiff to complete his teaching certification requirements; (2) the "right to 60 days written notice under his employment contract prior to termination;" and (3) the right to good faith evaluations. Plaintiff complains that he was terminated "without written notice and without affording the plaintiff an opportunity to contest the termination decision." Amended Complaint at ¶ 13.

To state a claim for a violation of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006). Thus, the threshold issue with respect to Plaintiff's procedural due process claim is whether Plaintiff was deprived of a "cognizable liberty or property interest." *Mudric v. Attorney General*, 469 F.3d 94, 98 (3d Cir. 1995) (noting that "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie"). As relevant to a procedural due process claim, these protected interests are not created by the Constitution, but rather are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support

9

claims of entitlement to those benefits." *Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007) (quoting *Board of Regents of State Coll. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed.2d 548 (1972)). In this case, the Court must look to these "rules or understandings," *i.e.*, statutory or regulatory provisions, express or implied contracts, to determine whether Plaintiff had a legitimate claim of entitlement to continued employment.

Plaintiff was a non-tenured teacher. As such, he does not fall within the scope of the protections of N.J.S.A. 18A:6-10, which provides that a tenured teacher may not be dismissed except for "inefficiency, incapacity, unbecoming conduct, or other just cause." Rather, termination of Plaintiff's employment was governed by his employment contract with HHSD, which provided as follows: "It is hereby agreed by the parties hereto that this contract may at any time be terminated by either party giving to the other 60 days' notice in writing of the intention to terminate the same." Okner Cert. Ex. D. A virtually identical provision existed in a contract at issue in *Mozier v. Board of Education*, 450 F. Supp. 742, 748 (D.N.J 1977). In *Mozier*, the court held that a non-tenured teacher's contract that was terminable at will by the employer on 60 days notice did not create an expectancy of employment for full term of the contract. "Employment terminable at will does not create property interests cognizable under the Due Process Clause of the Fourteenth Amendment." *Id.* Likewise, in the present case, Plaintiff's contract, being terminable for any reason on 60 days notice, does not create for Plaintiff a protectable property interest in his employment.

This conclusion does not change in light of Plaintiff's claim that he was not afforded

the requisite notice prior to his alleged termination.[6] Plaintiff alleges that HHSD failed to provide him 60 days notice prior to his termination as required by his employment contract, thereby depriving him of due process. Plaintiff argues, in essence, that his right to 60 days notice is a property right protected by due process. Plaintiff's argument, however, erroneously conflates his contractual rights with his constitutional rights. The Third Circuit has observed that while a contract with a state entity may give rise to a property right protected under the Fourteenth Amendment, not every state contract, or, it follows, every contractual term, gives rise to such an interest. *See Unger v. National Residents Matching Program*, 928 F.2d 1392, 1397 (3d Cir. 1991).

The Court in *Unger* noted two general types of contract rights that have been found to be protected property interests under the Fourteenth Amendment. "[T]he first type arises where the contract confers a protected status, such as those characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits. *Id.* at 1399. The second type "arises where the contract itself includes a provision that the state entity can terminate the contract only for cause." *Id.* Plaintiff's contract with HHSD, including the 60-day notice provision, does not fall into either of these categories. Importantly, the 60-day notice provision in the contract neither implied permanence in Plaintiff's employment nor provided Plaintiff with any substantive protection against termination. Consequently, HHSD's alleged failure to provide the appropriate notice did not deprive Plaintiff of due

---

[6]Clearly the facts regarding the termination of Plaintiff's employment are in dispute. For the purposes of this due process analysis, the Court accepts as true Plaintiff's version of the events.

process, but rather such failure may, at most, support a claim for breach of contract under state law.  *See Arena Del Rio, Inc. v. Gonzalez*, 704 F.2d 27, 28 (1st Cir. 1983) (where plaintiff used a Department of Transportation access road under a permit from the Department that could be cancelled on 30-days notice, the notice provision gave plaintiff no property interest within the meaning of the due process clause).

Finally, Plaintiff's claim that he was deprived of his "right to good faith evaluations" in violation of his due process rights also is without merit.  As a threshold matter, Plaintiff does not point to any statute, rule, or regulation nor offers any evidence of an express or implied contract or understanding showing he was entitled to such evaluations.  Moreover, it is highly doubtful that such an interest would rise to the level of a "property interest" afforded protection under the Due Process Clause.  Accordingly, Plaintiff's procedural due process claim is dismissed.

**C.  Due Process Claim Against Alan C. Stephens**

The Amended Complaint includes a due process claim against Alan C. Stephens, a Deputy Attorney General who represented the New Jersey Department of Labor in an action brought in state court by Plaintiff relating to unemployment compensation benefits.  Plaintiff alleges that Stephens made certain false and misleading representations to the state court in the course of the litigation.

Because Stephens has not answered Plaintiff's complaint nor appeared in any other manner in this case, and Plaintiff has not requested entry of default, on August 24, 2006, the Court issued a Notice of Call for Dismissal ("Notice") as to defendant Alan C. Stephens. Pursuant to this Notice, Plaintiff was required to either (1) establish that service of the

summons and complaint in this matter was effected on Stephens within 120 days of the filing of the complaint; or (2) show good cause for the failure to do so. Under Federal Rule of Civil Procedure 4(m), the Court may dismiss a complaint if a plaintiff fails to serve the summons and complaint within 120 days of the filing of the complaint.

The original complaint in this matter was filed on November 30, 2004. According to the affidavit and exhibits filed by Plaintiff in response to the Court's Notice, on December 2, 2004, Plaintiff sent the summons and complaint by Express Mail to Stephens at his workplace, the New Jersey Attorney General's office. Shortly thereafter, Plaintiff attempted to serve Stephens personally at his workplace on December 13, 16, and 20, 2004. These attempts were unsuccessful.

During this time, by letter dated December 17, 2004, Stephens's counsel advised Plaintiff that Stephens had not been served "in compliance with F.R.C.P. 4." Stephens's counsel further advised Plaintiff that he could avoid the cost of personal service by sending to her a completed request for waiver of service form,[7] and she provided Plaintiff with the Court's website address where the form could be found.

Plaintiff's process server made one last attempt to personally serve Stephens at his workplace in early January 2005, but was again unsuccessful. This time, the Attorney General's office provided the process server with a "Notice of Lawsuit Request for Waiver of Service of Summons" form, presumably for Plaintiff to use to request Stephens to waive service. There is no indication in the record that Plaintiff ever requested that Stephens waive

---

[7] Federal Rule of Civil Procedure 4(d) sets forth the manner in which a plaintiff can request a waiver of service from a defendant.

13

service, and Plaintiff made no further attempts at service.  In fact, Plaintiff has taken no further action in this matter as to Stephens since this last attempt at service in January 2005, with the exception of mailing Stephens copies of various papers filed in this case, including the amended complaint in August 2005.[8]  Stephens has not filed a responsive pleading or otherwise appeared in this matter.

    While a plaintiff certainly is not bound to undertake service of the summons and complaint (or request a waiver thereof)  in the manner preferred by a defendant, for service to be valid it must nevertheless be effected in accordance with the applicable rules.  Federal Rule of Civil Procedure 4(e) sets forth the manner in which service of process is to be made upon an individual:

> [S]ervice upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:
>
> (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or
>
> (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

    It is clear that Plaintiff did not serve Stephens personally, did not leave a copy at Stephens's dwelling house or usual place of abode with a suitable person, and did not deliver

---

[8] The amended complaint was sent via certified mail.  The certified mail receipt shows the correspondence was addressed to a post office box.  Pursuant to New Jersey Court Rule 1:5-2, service by mail to a post office box is only permissible if the sender cannot "by diligent effort" determine the addressee's street address.  As other exhibits show, Plaintiff was aware of Stephens's street address for mailing, but did not use it when sending the amended complaint.

a copy to an authorized agent. *See* Fed. R. Civ. P. 4(e)(2). Therefore, the question for the Court is whether Plaintiff, as permitted by Fed. R. Civ. P. 4(e)(1), effected service in accordance with New Jersey law.

New Jersey Court Rule 4:4-4 governs service of process. In particular, Rule 4:4-4(a)(1) provides that the primary method of obtaining *in personam* jurisdiction over an individual defendant within the judicial district is by

> delivering a copy of the summons and complaint to the individual personally, or by leaving a copy thereof at the individual's dwelling place or usual place of abode with a competent member of the household of the age of 14 or over then residing therein, or by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf

As noted above, Plaintiff did not effect service by any of these means. However, Rule 4:4-4(b) allows for "substituted or constructive" service when a plaintiff can show by affidavit that, despite diligent effort and inquiry, personal service cannot be made in accordance with 4:4-4(a). Plaintiff has provided the Court with an affidavit from a process server indicating that multiple attempts were made to serve personally to no avail. However, even if the Court were to find that the facts set forth in this affidavit evince the requisite diligence under the rules, Plaintiff has not shown that proper service of process by an appropriate alternative method has been effected as to Stephens.

The methods of "substituted or constructive" service provided for by Rule 4:4-4(b) are (1) personal service in another state or the District of Columbia; (2) personal service outside of the United States; (3) service by mail; (4) service "as provided by law;" and (5) if no other mode of service provided by the rule is possible, as provided by court order. The only method potentially relevant to the issue presently before the Court is service by mail. Specifically, the

15

pertinent part of 4:4-4(b) states that service may be made by "mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to . . . a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode."  This Plaintiff did not do.

       In sum, Plaintiff has simply not met the requirements of the New Jersey rules for service of process.  *See Driscoll v. Burlington-Bristol Bridge Co.*, 8 N.J. 433, 493 (N.J.1952) ("The requirements of the rules with respect to service of process go to the jurisdiction of the court and must be strictly complied with.").  Notably, after failing to effect personal service of process, Plaintiff made no further attempts to serve Stephens.  To the extent that Plaintiff would purport to rely upon the summons and complaint sent via express mail on December 2, 2004, the Court finds that this mailing did not constitute proper service for three reasons.  First, the papers were mailed before Plaintiff attempted personal service, therefore, substituted service was not appropriate because at the time of mailing it was impossible to show by affidavit "that despite diligent effort and inquiry personal service [could not] be made."  Second, the summons and complaint were not sent by certified mail, return receipt, simultaneously with ordinary mail as required by 4:4-4(b).  Last, the provision for "optional mailed service" under Rule 4:4-4(c), which allows service to be made by registered, certified or ordinary mail, provides that such service is effective "only if the defendant answers the complaint or otherwise appears in response thereto," which Stephens has not done.

       Consequently, Plaintiff has not effected service upon Stephens within the time prescribed by the Rules, and Plaintiff has not shown good cause for his failure to do so.  This provides grounds for this Court to dismiss the complaint as to Stephens under Federal Rule of

Civil Procedure 4(m).

However, additional grounds exist for dismissal of Plaintiff's claim against Stephens. Despite Plaintiff's claims that he properly effected service, Plaintiff has done nothing to prosecute his case against Stephens the entire time this case has been pending. Had Plaintiff properly served the original complaint as he alleges he did, Stephens' time to file and serve an answer expired well over two years ago. Nevertheless, Plaintiff has not sought an entry of default or default judgment. Plaintiff, although proceeding *pro se*, is an attorney. He therefore should be aware that by failing to take any action whatsoever on a claim for over two years he risks dismissal of that claim. The Court has weighed the appropriate factors and concluded that, pursuant the Court's inherent powers and Federal Rule of Civil Procedure 41(b), Plaintiff's claim against Alan Stephens should be dismissed for failure to prosecute. *See Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir.1984) (listing factors to be considered in dismissing case under Rule 41(b) as personal responsibility, prejudice, history of dilatoriness, willfulness/bad faith, alternative sanctions, and meritoriousness of the claim).

**D.  State Law Claims**

Having dismissed Plaintiff's due process claims, no federal claims remain in this case. The claims that remain are Plaintiff's breach of contract and wrongful discharge claims, HHSD's counterclaim for attorneys fees under New Jersey's frivolous litigation statute and HHSD's third-party claims for intentional interference with a contractual relationship, fraud, contribution and indemnification. "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the

17

pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).  *See also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [state law claim] if ... the district court has dismissed all claims over which it has original jurisdiction...."); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 106 (3d Cir.1990) ("[T]he rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court."); *Bright v. Westmoreland County*, 380 F.3d 729, 751 (3d Cir. 2004) ("[A]bsent extraordinary circumstances, where the federal causes of action are dismissed the district court should 'ordinarily refrain from exercising pendent jurisdiction [over the state law claims].'") (quoting *Rolo v. City Investing Co. Liquidating Trust*, 845 F. Supp. 182, 215 (D.N.J.1993)).  Importantly, as pointed out by the Supreme Court, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed.2d 218 (1966).

      Upon reviewing the record in this case, the Court finds that there are no extraordinary circumstances that would warrant exercising supplemental jurisdiction over the state law claims.  To the contrary, the Court finds, in particular, that certain issues relating to state "school laws," for example, that have been raised by Defendant would be more appropriately addressed by the state court.  Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining claims in this case.

**III. Conclusion**

For the reasons set forth above, HHSD's motion for summary judgment is granted in part and denied in part. All claims in Plaintiff's complaint over which the Court had original jurisdiction are dismissed pursuant to HHSD's motion, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims in this matter. Consequently, Plaintiff's complaint and HHSD's third party complaint are dismissed in their entirety. Third Party Defendant Arthur Goodmann's motion is dismissed as moot. An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Date: June 20, 2007